OPINION
By the Court,
Young, L:
The issue of whether Justice Robert Rose is disqualified because of animus toward Laura FitzSimmons, a party’s attorney, *1103 was presented and decided in the recent case of Las Vegas Downtown Redev. Agency v. Hecht, 113 Nev. 644, 940 P.2d 134 (1997). Laura FitzSimmons is one of the attorneys for appellant Whitacre Investment Company, respondents Buckwalter, et al., and appellant C.B.M., Ltd. (collectively “movants”), and they again assert that Justice Rose is disqualified because of animus toward their attorney. We elect to follow our holding in Hecht, and reject the motion to disqualify based on animus toward movants’ attorney.
On July 17, 1997, movants filed identical motions in each of these appeals seeking leave to file supplements in support of their motions to disqualify Justice Rose. On August 22, 1997, the clerk of this court received, but did not file, identical supplementary documents entitled: “Real Party Laura FitzSimmons’ Reply to Justice Rose’s Supplemental Response to the Motion to Disqualify Him.” The additional arguments and charges presented in these documents expand upon the claim that Justice Rose is disqualified because of animus toward movants’ attorney.
NRAP 35(d) provides that a challenged justice may tender á response in writing to a motion for disqualification. The rule, however, does not permit the filing of a reply to the response tendered by a challenged justice. To the contrary, NRAP 35(d) specifically directs that “[sjerial motions or charges, whether entitled as separate challenges, or as supplements, or entitled in any other way, must not be filed, and will not be entertained.” (Emphasis added.) The rationale behind NRAP 35(d) was stated in Ainsworth v. Combined Ins. Co., 105 Nev. 237, 242-43 n.2, 774 P.2d 1003, 1008 n. 2, cert. denied, 493 U.S. 958 (1989), where this court observed:
[Sjound judicial policy underlies the absence of any provisions in our rules permitting the filing of replies to oppositions to motions and petitions without express leave of the court. See NRAP 27; NRAP 40. No litigant has an unqualified right to inundate a court with motions, supplements, errata, responses, exhibits and replies belatedly asserting arguments that it previously failed to raise. Nor do litigants have unfettered license to utilize such methods to manipulate judicial proceedings and unreasonably delay a final resolution of litigation.
We hold that the arguments and charges in the serial documents of July 17, 1997, and August 22, 1997, are procedurally improper and “will not be entertained.” NRAP 35(d). Moreover, we conclude that these documents constitute belated and procedurally improper attempts: (1) to challenge this court’s decision *1104 in Las Vegas Downtown Redev. Agency v. Hecht, 113 Nev. 644, 940 P.2d 134 (1997); (2) to assert arguments that movants previously failed to raise; (3) to abuse the appellate processes of this court; (4) to obfuscate the issues; and (5) to delay the final resolution of these matters. This court simply cannot afford to further dissipate its limited resources on these disqualification matters. Accordingly, we deny the motions of July 17, 1997, and we decline to entertain the arguments in that document and the document received by the clerk of this court on August 22, 1997. The clerk of this court shall return the documents unfiled.
The second ground cited by the movants is that Justice Rose should be disqualified because in 1993 he allegedly gave an advisory opinion to legislators when they were considering an amendment to NRS 37.009, the section that defines the term “value” to be used in eminent domain cases. We consider that issue in this opinion.

FACTS

Movants assert that Justice Rose is disqualified from participating in these condemnation cases because of conversations he had with two legislators during the 1993 legislative session concerning the definition of the term “value” as contained in NRS 37.009. This definition is used to determine the compensation to be paid to the person or entities whose property is taken through eminent domain proceedings. One state senator indicated that he had talked to then Chief Justice Rose about redefining the term “fair market value.”
Senator Adler stated he had conferred with Chief Justice Rose regarding this question, and that Justice Rose stated the Supreme Court does not have a problem with adding to or changing the definition. The court likes to keep their opinions intact, but the justices stated the legislature should feel free to implement something believed to be better. Senator Adler further advised the court was not adverse to changing or adding to the definition of market value, as long as it was a better definition in the opinion of the legislature. Senator Smith advised that Chief Justice Rose had similarly assured him.
Justice Rose has explained these telephone conversations in his response filed in opposition to the motions to disqualify him.
In the winter-spring of 1993, several state legislators called to tell me that the Legislature would be holding hearings to see if a better definition to the term “fair market value” could be achieved. They hoped the Court would not be offended since we had approved the definition in an *1105 opinion. I told the legislators that they had the power to redefine the term, and I did not think anyone would be offended. I recall no conversation of what the new definition would be. I did state that the Court may well be called upon to review the legal sufficiency of any new definition. It appeared that the lawyer-legislators who called were merely extending a courtesy to the Court and its then Chief Justice. I gave no advice to the legislators and did not defer to them, other than to acknowledge that they had the power to redefine “fair market value.”

DISCUSSION

Movants allege that Justice Rose prejudged an issue before the court and gave an advisory opinion concerning NRS 37.009, the definition of the term “value” to be used in condemnation cases. Even if we assume that NRS 37.009 plays a role in these cases, we find nothing in the records to support this allegation of disqualification made by movants. Justice Rose simply acknowledged that the legislature had the power to redefine the definition of “value,” and he did not think the court would be offended. Justice Rose gave no indication about what he thought the definition of “value” should be and also stated that the court may well be called upon to review the legal sufficiency of any new definition. While advisory opinions by this court are prohibited by the Nevada Constitution, this was neither an advisory opinion nor the prejudging of any issue in these cases. See Nev. Const. art. 6, § 4; City of No. Las Vegas v. Cluff, 85 Nev. 200, 452 P.2d 461 (1969). We see nothing more in these two conversations than what Justice Rose has stated, that the lawyer-legislators were merely extending a courtesy to the court and its then Chief Justice and that he responded in an appropriate, non-committal manner.

CONCLUSION

The issue of Justice Rose’s disqualification because of animus toward attorney Laura FitzSimmons was decided against the movants’ position in our recent Hecht decision, and this prior ruling disposes of the first ground urged for Justice Rose’s disqualification in these cases. We also conclude that Justice Rose did not give an advisory opinion or prejudge an issue in these cases when he discussed the general subject of redefining the statutory definition of value. Accordingly, the movants’ motions to disqualify Justice Rose are denied.[1]
*1106 Shearing, C. J., and Papez, D. J.,[2] concur.

 In reaching this result, we have not considered the assertion of Justice Rose that Justice Charles Springer should not participate in deciding this motion to disqualify.